UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM LLOYD VITON, | ) | 1:08-CV-01666 OWW JMD HC |
| | ) | |
| Petitioner, | ) | FINDING AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| JAMES D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

William Lloyd Viton ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgement of the Los Angeles County Superior Court. Petitioner was convicted in 1993 of second degree murder with a firearm sentence enhancement, resulting in a sentence of eighteen years to life. (Pet. at 2; Answer at 1).

Petitioner is not challenging his conviction in this instant action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in October 2006. (Answer at 1). Petitioner contends that the Board violated his constitutional rights when they denied him parole. (Pet. at 5).

1   Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles
2 County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. 1). The Los
3 Angeles County Superior Court issued a reasoned opinion denying the petition. (*See* Answer Ex. 2).
4   Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal
5 and the California Supreme Court. (Answer Exs. 3, 5). The California Court of Appeal and
6 Supreme Court issued summary denials of the petitions. (*See* Answer Exs. 4, 6).
7   On October 3, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in
8 the Central District of California. (Court Doc. 1). The petition was transferred to this Court on
9 October 31, 2008. (Court. Docs. 3, 4).
10   Respondent filed a response to the petition on May 26, 2009. Respondent admits that
11 Petitioner has exhausted his state remedies and that the instant petition is timely. (Answer at 2).
12 Petitioner filed a traverse to the reply on June 15, 2009 and a supplement to that traverse on July 24,
13 2009. (Court Docs. 19, 20).

## FACTUAL BACKGROUND

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's denial of parole was objectively unreasonable. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the offense which had been taken from the probation officer's report, stating:

> Investigation review that the decedent and several friends and family members were at the park when the inmate and person living next door–next to the park objected to the loud radio playing. An altercation between the decedent's group and the inmate accelerated and the inmate left and returned with a twenty gauge shotgun, he pointed at the decedent after firing one round in the air. The second shot hit the decedent in the chest, knocking him to the ground. Paramedics transported [the decedent] to the hospital where he expired. Examination revealed multiple apparent shotgun pellet wounds on the right chest, side, shoulder and upper arm. Multiple pellet wounds were also found on the back of the left hand. The inmate was arrested, transported to and booked at Norwalk Sheriff's station.

(Transcript of Parole Hearing, at 8-9).

Petitioner was provided with an opportunity to provide his version of events:

> The situation started with one event and then it progressed from there to that point. It started with when [sic] they first pulled the vehicle behind my fence and they

> started–the whole group ended up around this particular vehicle. I guess that he'd gotten in a car accident or something, later I found out. Then my dog went out to the fence and started barking at 'em and they started kicking him and pushing at my fence and yelling at my dog. And I was in the garage working and went out to see what was going on. When I proceeded to go out there, they got belligerent and started wanting to go climb over the fence and get to me, per se. And I defended myself through what I thought was the best of my ability at that particular time. And they did not seem to want to back off at all. You know, I told them, why don't you take your car down to a parking lot where it belongs, because this whole areas where it was at was a no parking zone. And it continued to escalate from that point to the point where I had talked to my wife, I told her–I yelled at my wife and told her to call the police, and I didn't know if she did. And I turned around to go into the house and as I was returning to the house, I was hit in the back with a beer bottle. I proceeded to go into the house and at that point in time I found out she was already on the phone with the police. And I went and got my shotgun from out of the bed–out from underneath the bed and proceeded back out into the yard. I thought that if I fired a shot in the air, that they would leave the area. Obviously they didn't. It just continued to escalate to the point they were down at my neighbor's fence ripping off boards for weapons. And I proceeded to move towards the fence, and then I was struck in the head with a beer bottle in the head by one of them as they kicked my gate open. And I dropped the gun down and shot.

(Transcript of Parole Hearing, at 9-10).

## **DISCUSSION**

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole, which occurred when Petitioner was incarcerated at Avenal State Prison, which is located in Kings County.[1] (Pet. at 2). As Petitioner is still incarcerated at Avenal State Prison, the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

\\\

---

[1] Kings County falls within this judicial district. 28 U.S.C. § 84(b).

## II.     ADEPA Standard of Review

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

\\\

\\\

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

1 later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
2 ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that
3 federal review is not barred by a State procedural ruling, "the question of which state court decision
4 last 'explained' the reasons for judgement is therefore relevant only for purposes of determining
5 whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly
6 established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal
7 habeas court looks through ambiguous or unexplained State court decisions to the last reasoned
8 decision in order to determine whether that decision was contrary to or an unreasonable application
9 of clearly established federal law. *Id*.

10   Here, the Los Angeles County Superior Court, the California Court of Appeal, and the
11 California Supreme Court all adjudicated Petitioner's claims.  (*See* Answer Exs. 2, 4, 6).  As the
12 California Court of Appeal and California Supreme Court issued summary denials of Petitioner's
13 claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that
14 of the Los Angeles County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

15 **III.   Review of Petitioner's Claim**

16   The claims for relief set forth in the petition for writ of habeas corpus all allege that the
17 Board's denial of parole was a violation of his right to due process of the law as there was not "some
18 evidence" to support the Board's decision.

19   *A.   Legal Standard for Denial of Parole*

20   "We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty
21 or property interest which has been interfered with by the State; the second examines whether the
22 procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.
23 The United States Constitution does not, by itself, create a protected liberty interest in a parole date.
24 *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  Respondent argues that Petitioner does not have a
25 liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary.
26 (Answer at 2).  The Ninth Circuit has consistently held that California prisoners whose sentence
27 provide for the possibility of parole possess a liberty interest in receiving a parole release date, "a
28 liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505

1  F.3d at 850; *see also McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz*
2  *v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives
3  rise to a cognizable liberty interest in release on parole); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th
4  Cir. 2003).   The Ninth Circuit's reasoning is compelling; thus, the Court finds that Petitioner has a
5  protected liberty interest in a parole date.

6        A finding that a liberty interest exists does not end the Court's inquiry as the Due Process
7  Clause is not violated where the denial of a petitioner's liberty interests follows the State's
8  observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent contends
9  that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and
10 for the Board to state their reasons for denial.  (Answer at 4-5).  This contention is based on the
11 argument that the "some evidence" standard does not constitute clearly established federal law and is
12 not applicable to parole denials.  (Id. at 5).[2]  However, Respondent admits that a line of Ninth Circuit
13 cases has found otherwise.  (Id).  The Ninth Circuit has held that a prisoner's due process rights are
14 implicated where there is no evidence to support the denial of parole and that the some evidence
15 standard is applicable under AEDPA.  *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129.
16 "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that
17 'revocation of good time does not comport with 'the minimum requirements of procedural due
18 process' unless the findings of the prison disciplinary board are supported by some evidence in the
19 record.'" *Sass*, 461 F.3d at 1128 (citations omitted).  This evidentiary standard prevents arbitrary
20 deprivations of the prisoner's liberty interest without imposing undue administrative burdens or
21 threatening institutional interests.  *Hill*, 472 U.S. at 455.  The rationale espoused by the Ninth Circuit
22 in *Irons*, *Sass*, and *Biggs* is compelling and the Court rejects Respondent's argument that the
23 application of the "some evidence" standard to the parole context is improper under AEDPA.

---

[2] Respondent is correct that a parole release determination is not subject to all of the due process protections of an adversarial proceeding.  *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists."  *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, an inmate is at least entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole."  *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that he was deprived of any of these procedural safeguards.

1           Errors of state law generally do not give rise to habeas corpus relief as "it is not the province
2   of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v.*
3   *McGuire*, 502 U.S. at 67-68.  However, the inquiry of "whether a state parole board's suitability
4   determination was supported by 'some evidence'" is framed by the state statutes and regulations
5   governing parole suitability.  *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915.  California law
6   provides that after an eligible life prisoner has served the minimum term of confinement required by
7   statute, the Board "shall set a release date unless it determines that the gravity of the current
8   convicted offense or offenses, or the timing and gravity of current or past convicted offense or
9   offenses, is such that consideration of the public safety requires a more lengthy period of
10  incarceration for" the prisoner.  Cal. Penal Code § 3041(b).  "[I]f in the judgment of the panel the
11  prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner
12  must be found unsuitable and denied parole.  Cal. Code Regs., tit. 15, § 2402(a); *see In re*
13  *Dannenberg*, 34 Cal.4th at 1078, 1080.  The Board decides whether a prisoner is too dangerous to be
14  suitable for parole by applying factors set forth in the California Code of Regulations.  *See* Cal. Code
15  Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916.  The regulations
16  permit consideration of "all relevant, reliable information available to the panel," and explicitly calls
17  for consideration of "the base and other commitment offenses, including behavior before, during and
18  after the crime."  Cal. Code Regs., tit. 15, § 2402(b).  Factors supporting a finding of unsuitability for
19  parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel
20  manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable
21  relationships with others; and serious misconduct while incarcerated.  Cal. Code Regs., tit. 15, §
22  2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).
23          The Court's review of Los Angles County Superior Court's decision reveals that the State
24  court did not unreasonably apply the "some evidence" standard.  *See* 28 U.S.C. § 2254(d)(1).  The
25  Superior Court concluded that there was some evidence to support the Board's finding that Petitioner
26  "presents an unreasonable risk of danger to society and is unsuitable for parole."  (Pet. Ex. G at 1).
27  The Superior Court noted that the Board had relied not only on the commitment offense but also on
28  Petitioner's failure to "fully acknowledge[] the scope of his actions, as he maintained that he was not

sure the victim had died, and also that he thought he had a right to defense himself and his family." (Id. at 2).

Thus, it is not the case that Petitioner's due process rights were violated by continued reliance on the commitment offense. Both the Ninth Circuit and the California courts have noted that sole reliance on the commitment offense may violate an inmate's due process rights. The Ninth Circuit noted in *Biggs* that, "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment...*could* result in a due process violation." *Id*. at 917 (emphasis added). The California Supreme Court has held that even where the commitment offense was particularly egregious, reliance on this immutable factor *may* violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).[3] However, prior to *Lawrence*, the Ninth Circuit had found that a parole board's sole reliance on a commitment offense comports with the requirements of due process where the board's determination of unsuitability came prior to the prisoner serving the minimum number of years required by his sentence. *Irons*, 505 F.3d at 853. The *Irons* court specifically stated that:

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, *the decision was made before the inmate had served the minimum number of years required by his sentence*...All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, *due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms*.

*Id*. (emphasis added). *Irons* suggests that the Board's reliance on immutable factors, including the commitment offense, would not violate Petitioner's due process rights. *See id*. at 853-854; *Sass*, 469

---

[3]In *Lawrence*, the California Supreme Court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226.

F.3d at 1129.[4] Thus, even if the Board has solely relied on the commitment offense, Petitioner's case is significantly distinct from *Lawrence* as the *Lawrence* court had been confronted with a denial of parole stemming from a thirty-six year old commitment offense. Here, Petitioner began serving his indeterminate life sentence on January 25, 1995.[5] Contrary to Petitioner's assertion otherwise, Petitioner will have served his minimum sentence of fifteen years to life on January 25, 2010, after the October 2006 hearing at which time he had only served approximately eleven years and nine months. Consequently, the Board's reliance on Petitioner's commitment offense comports with the requirements of due process as the Board's determination of unsuitability came prior to when Petitioner served the minimum number of years required by his sentence. *See Irons*, 505 F.3d at 853; *Paddock v. Mendoza-Powers*, 674 F.Supp.2d 1123,*6 (C.D. Cal. 2009) (citing *Irons* and *Sass* for the proposition even if evidence of the commitment offense "were the only evidence the Board had supporting its determination to deny petitioner parole, petitioner would not have been deprived of due process of the law by the Board because petitioner 'had not served the minimum number of years to which [he] had been sentenced at the time of the challenged parole denial by the Board'").

Furthermore, Petitioner's due process rights were not violated even if Petitioner had served his minimum sentence by the time the Board denied him parole. As noted by the *Lawrence* court, a discipline-free record while incarcerated does not automatically render the commitment offense unpredictive of current dangerousness. *Id*. (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in concluding that lack of insight into the commitment offense rendered aggravating factor of the crime probative of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary or capricious despite an inmate's discipline-free record during incarceration). The denial of parole in Petitioner's case, akin to *Shaputis*, is based

---

[4] The rationale for permitting reliance on the commitment offense prior to the inmate having served his/her minimum sentence may lie in the fact that the "rational nexus" between the commitment offense relied upon by the Board and an inmate's current dangerousness is not as attenuated where the inmate has yet to serve his full sentence.

[5] As Petitioner's sentence consisted of a three years term in addition to his life sentence, Petitioner did not start serving his fifteen years to life sentence until January 1995 despite having been received into the custody of the California Department of Corrections in July 1993. (Transcript of Parole Hearing at 1).

primarily on Petitioner's lack of insight combined with the nature of the commitment offense. In its decision, the Board explicitly relied on Petitioner's lack of insight into a causative factor of the crime, namely anger issues, in finding that Petitioner "continues to be unpredictable and a threat to others." (Transcript of Parole Hearing at 56). The Board noted that "[i]n view of the lack of accountability and acknowledgment of his role and the ultimate consequence of his actions, the Panel believes there is no indication that the prisoner would behave differently if parole." (Id). The Board's finding is supported by the record as the psychological evaluation noted:

> The inmate questions the veracity of several of the events and facts in the case, not the least of which is whether or not the victim actually died. However, given his conviction by a jury, *the inmate must be viewed as not taking full responsibility for his behaviors, as focusing blame onto others, and thus not being able to present some semblance of emotional remorse.*

(Pet. Ex. F at 9) (emphasis added).

The Board also cited to Petitioner's responses during the hearings as evidence that he had yet to grasp the causative factors of his crime.[6] (Transcript of Parole Hearing at 55). During the hearing, Petitioner continued to deny that he had anger issues and that his anger issues has played a role in his commission of the crime. (Id. at 25). Additionally, Petitioner attributed blame for the commission of the crime to victim, stating, "[y]ou know, if the situation hadn't been what they brought to start with I think it would have never came about." (Id. at 12). The Board noted that in shifting blame to others and in not believing that the victim had died, Petitioner has failed to take responsibility for the crime. (Id. at 55). Failure to take responsibility for the crime bears a rational nexus to current dangerousness as it suggests that Petitioner has not dealt with the factors that caused his actions, thus making it more likely that Petitioner would react similarly when confronted with a similar situation. As the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary,'" the Court

---

[6] Petitioner contends that the Board's finding that he lacked remorse was erroneous given his closing remarks. Here, the Board gave more credence to his remarks throughout the hearing and the psychological evaluation than Petitioner's closing remarks. It is not the function of this court to re-weigh the evidence that was before the Board. *Superintendent v. Hill*, 472 U.S. at 454 (noting that in conducting the "some evidence" inquiry, a court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence).

finds that the State court did not unreasonably apply this standard as the Petitioner's lack of insight into the crime meet that minimal standard. *See Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Thus, Petitioner is not entitled to habeas corpus relief.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    April 16, 2010**          <u>     /s/ John M. Dixon     </u>
                                                      UNITED STATES MAGISTRATE JUDGE